UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| STACY GUAY, ) | |
| ) | **DEMAND FOR JURY TRIAL** |
| PLAINTIFF ) | |
| ) | |
| v. ) | |
| ) | |
| ACADIA HOSPITAL CORPORATION ) | |
| D/B/A NORTHERN LIGHT ACADIA ) | |
| HOSPITAL, ) | |
| DEFENDANT ) | |

## <u>COMPLAINT AND JURY DEMAND</u>

### <u>Parties</u>

1.      Plaintiff Stacy Guay ("Ms. Guay" or "Plaintiff") is a female resident of the State of Maine, residing at 10 Randolph Drive, Bangor Maine, 04401.

2.      Defendant Acadia Hospital Corporation doing business as Northern Light Acadia Hospital (the "Company" or "Defendant") is a non-profit corporation that, upon information and belief, is incorporated in the State of Maine and its principal office is located at 268 Stillwater Avenue, Bangor, Maine 04401.

### <u>Jurisdiction and Venue</u>

3.      The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff has brought claims pursuant to the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 1201 *et seq.* and the Family and Medical Leave Act ("FMLA") 29 U.S.C. §2615.  The court may exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. §1367.

4.      Venue is appropriate in the District of Maine as the acts or omissions giving rise to the claims in this Complaint occurred in the District of Maine.

5.      This court has personal jurisdiction over the Company because the Company is a resident of the state of Maine (incorporated in Maine with its principal place of business in Maine).  Additionally, the Company engaged in and transacted business in the State of Maine, including by owning, managing and/or operating facilities in Maine, and by employing the Plaintiff in Maine, and the Plaintiff's causes of action stem largely from business transactions and employment actions by the Company within the State of Maine.  The Company is registered with the Maine Department of State as a domestic corporation operating in the State of Maine, including with a DOS process address located in the State of Maine (at 128 State St., #3, Augusta, 04330). Indeed, the Plaintiff was employed by the Company in the State of Maine at a facility located in Bangor, ME, was managed by the Company in the State of Maine, and was terminated by the Company in the State of Maine.

## Statement of Facts

6.      In or around, October 2005, Ms. Guay was hired by the Company as a Registered Nurse.

7.      At all relevant times, the Company employed 15 or more employees for 20 or more weeks in the previous calendar year.

8.      Accordingly, at all relevant times, the Company was an employer under the Americans with Disabilities Act ("ADA") and the Maine Human Rights Act.

9.      At all relevant times, Ms. Guay was a qualified employee, and her job performance was satisfactory.

10.      Indeed, during Ms. Guay's tenure with the Company she received multiple positive performance reviews.

11.     At all relevant times, Ms. Guay suffered from (and continues to suffer from) chronic migraines with aura.

12.     Ms. Guay's chronic migraines with aura (her "migraines") are an impairment which substantially limits one or more of her major life activities (especially during flare-ups), including, but not limited to, Ms. Guay's ability to concentrate, drive, and eat. Ms. Guay's chronic migraines also substantially impair and limit the operation of one or more of her major bodily functions, including, but not limited to, her neurological and brain functioning. Accordingly at all relevant times, Ms. Guay was (and still is) disabled under the ADA and Maine state law.

13.     In or around May 2020, after earning her Masters of Nursing Practice degree in Psychiatric Mental Health and becoming a licensed Nurse Practitioner ("NP"), Ms. Guay was promoted to the position of Psychiatric Mental Health Nurse Practitioner.

14.     Ms. Guay began her new role in or around August 2020.

15.     In or around March 2021, Ms. Guay received a positive performance review and a merit-based pay raise.

16.     Several days after Ms. Guay received her performance review, while she was working, Ms. Guay began to have a migraine.

17.     Ms. Guay's migraine became very severe causing her to vomit.

18.     Ms. Guay called the Company's central calling number for attendance matters and asked for the accommodation of leaving work early due to her severe migraine.

19.     This accommodation request was seemingly granted.

20.     Ms. Guay's migraine did not subside the following day. Accordingly, Ms. Guay called the central calling number again, again disclosed her chronic migraine disability and

ongoing migraine symptoms, and requested to stay home from work due to her disability flare-up.  This request was seemingly granted.

21.    Ms. Guay's migraine did not subside for the remainder of the week.

22.    Ms. Guay continued to experience nausea, vomiting, light sensitivity, and dizziness.

23.    These symptoms impaired her ability to drive and perform daily life activities.

24.    Ms. Guay takes prescription medication for her disability.

25.    At all relevant times, the Company employed 50 or more employees in the preceding 12-month period.  As such, the Company was an employer under the Family and Medical Leave Act ("FMLA") and the Maine Family and Medical Leave Act ("MFMLA").

26.    Additionally, at this time, Ms. Guay had worked for the Company for more than 12 months and at least 1,250 hours during the previous 12-month period.

27.    The Company also employed 50 or more employees within a 75-mile radius of Ms. Guay's worksite (268 Stillwater Avenue, Bangor, Maine 04401).

28.     Ms. Guay was therefore an eligible employee under the FMLA and MFMLA.

29.    Due to the severity of her symptoms, Ms. Guay had no choice but to call out of work each day that week and did so following the Company's call out procedure (making clear that the call out was due to the ongoing symptoms of her chronic migraine disability).

30.    Notably, this leave was protected under the FMLA and MFMLA.

31.    Each day Ms. Guay stayed home from work she contacted the Company's central calling department and disclosed that she was unable to come into work due to her migraine-related symptoms.

32.     Additionally, Ms. Guay contacted her supervisor, Interim Department Head, Kadija Watkins ("Watkins") and disclosed that a flare-up of her chronic migraines was preventing her from coming into work.

33.     Upon information and belief, Watkins does not suffer from any disabilities and is not regarded as disabled by the Company.

34.     After being absent one week due to her migraine disability, Ms. Guay returned to work and was able to successfully accomplish all the essential functions of her position.

35.     Thereafter, Ms. Guay still did require intermittent time off due to her migraine disability.

36.     In or around March 2021, Watkins recommended that Ms. Guay apply for intermittent leave under the federal FMLA for Ms. Guay's severe migraines.

37.     Accordingly, Ms. Guay sent her doctor the necessary FMLA paperwork for intermittent leave for her migraines and asked her doctor to fill out the paperwork.

38.     Ms. Guay's doctor filled out the necessary paperwork for her intermittent FMLA request, and Ms. Guay timely submitted her completed leave request paperwork to the Company.

39.     As such, this request constituted a request for leave protected under the FMLA and MFMLA.

40.     Additionally, this was a request for a disability-related accommodation.

41.     On March 19, 2021, Ms. Guay was notified that her intermittent FMLA request was approved.

42.     Ms. Guay used her intermittent FMLA to take time off from work on days she experienced a flare-up of her migraine disability.

43.     In or around May 2021, Adult Outpatient/Mood and Memory Manager, Kathleen Young ("Young") was hired and became Ms. Guay's manager.

44.     Upon information and belief, Young does not suffer from any disabilities and is not regarded as disabled by the Company.

45.     In or around July 2021, Ms. Guay began to experience flare-ups of her migraines more frequently and contacted her doctor regarding these flare-ups.

46.     On or about July 8, 2021, Ms. Guay's doctor put her onto new medication to manage Ms. Guay's chronic migraine headaches.

47.     Ms. Guay's doctor recommended that while she adjusted to this new medication it would be in Ms. Guay's best interest to use intermittent FMLA to work half days through the end of July.

48.     Accordingly, Ms. Guay's doctor provided her with a note reflecting her recommendation of intermittent leave, which could be accomplished through a temporary recommended decrease in Ms. Guay's work schedule.

49.     Ms. Guay contacted Young and asked for the disability-related accommodation of working half days through the end of July, while using intermittent FMLA leave to cover the rest of her time and provided Young with her (Ms. Guay's) doctor's note confirming this request.

50.     In response, Young claimed it would be too complicated to switch Ms. Guay's pay from salary to hourly in order for Ms. Guay to work half days and instead insisted that Ms. Guay either not take any leave or else take a month off from work to address her health issues.

51.     Following this conversation, Ms. Guay continued to work full-time, as she did not want to (and did not need to) stop working entirely.

52.     It was clear that Young was not willing to engage in an interactive dialogue with Ms. Guay regarding her disability-related accommodation request.

53.     On or about July 10, 2021, Ms. Guay began to experience blurred vision in addition to her migraines and vomiting.

54.     On or about July 16, 2021, Ms. Guay's blurry vision, vomiting, and migraines had not subsided. Accordingly, Ms. Guay went to the emergency room for treatment of her disability-related flare-up.

55.     On or about July 21, 2021, Ms. Guay contacted her doctor regarding her disability-related flare-up and emergency room visit.

56.     In response, Ms. Guay's doctor advised her to take a continuous medical leave from work for three weeks beginning immediately.

57.     On July 21, 2021, Ms. Guay requested the accommodation of taking a continuous medical leave protected under the FMLA and MFMLA due to her persistent disability-related symptoms.

58.     On July 21, 2021, Ms. Guay's doctor timely faxed the necessary paperwork to the Company's Human Resources department.

59.     Notably, Ms. Guay still had time protected under the FMLA available to cover this continuous leave request.

60.     On July 23, 2021, Ms. Guay received notice that her request was approved.

61.      On or about, August 3, 2021, Ms. Guay's doctor provided her with a note clearing Ms. Guay to return to work as of August 9, 2021, and a note requesting the disability-related accommodation of a dimmer switch on Ms. Guay's office lights as well as a dimmer panel/anti-glare screen on her computer monitor.

62.     These accommodations were important since bright light could, and sometimes did, trigger Ms. Guay's migraines and likewise worsened migraine symptoms.

63.     Ms. Guay provided this paperwork to the Company.

64.     On or about, August 9, 2021, Ms. Guay returned to work from her medical leave.

65.     Notably, Ms. Guay was protected under the FMLA/MFMLA up through and including her return on August 9, 2021.

66.     On or about, August 9, 2021, upon Ms. Guay's return to work she met with Watkins to discuss her schedule and request the disability-related accommodations her doctor recommended (that was reflected in the note she had provided on August 3, 2021).

67.     During this meeting Watkins told Ms. Guay that while she was out on her medical leave her work was "reviewed under a microscope."

68.     It was clear from this communication that Watkins was seeking to find fault with Ms. Guay's work to retaliate against her for requesting accommodations.

69.     Watkins was clearly retaliating against Ms. Guay for utilizing leave protected under the FMLA and MFMLA and attempting to discourage Ms. Guay from taking further leave under the FMLA and MFMLA.

70.     Therefore, Watkins was interfering with Ms. Guay's future FMLA and MFMLA requests, including by seemingly threatening ongoing retaliation.

71.     Watkins accused Ms. Guay of prescribing medication to a patient who was not a resident of the state of Maine.

72.     Ms. Guay explained to Watkins that this patient was a college student who moved from their home state to Maine to attend college (and therefore was currently a resident of Maine).

73.     Ms. Guay further explained that she always sent this patient's prescriptions to a pharmacy in the state of Maine.

74.     Indeed, upon information and belief, other medical practitioners at the Company routinely prescribed medication to college students originally from out of state and such individuals were not reprimanded for doing this.

75.     Notably, prescribing medication to college students who are originally from other states but who are residing in Maine was not against Company policy and is perfectly legal (and within Ms. Guay's prescription licensing).

76.     Given that Ms. Guay had done nothing wrong, it was clear that Watkins and the Company were trying to find a pretext to take adverse actions against Ms. Guay and were treating her more harshly than non-disabled employees who didn't take protected leaves.

77.     On or about August 16, 2021, Ms. Guay experienced a flare-up of her migraine disability and called out from work explaining that she was suffering a flare up of her migraine disability.

78.     This request was both a request for a reasonable accommodation and a request to utilize her previously approved intermittent FMLA/MFMLA.

79.     On or about August 17, 2021, Young met with Ms. Guay and disciplined her for calling out due to her disability-related flare-up, retroactively denying Ms. Guay's disability-related accommodation request.

80.     Additionally, this interfered with Ms. Guay's right to take FMLA and MFMLA leave and constituted retaliation against Ms. Guay for taking such leave.

81.     During this discussion Ms. Guay raised protected concerns that she was being subjected to improper discrimination and retaliation.  Ms. Guay also expressed to Young that she

never received the dimmer switch or the anti-glare screen for her computer Ms. Guay requested as a disability-related accommodation.

82.     Ms. Guay further explained that having this dimmer switch and anti-glare screen would decrease the frequency of her migraines.

83.     Young refused to provide the dimmer switch or anti-glare screen or enter into an interactive dialogue related to this request.

84.     On or about, August 26, 2021, Ms. Guay raised protected concerns to Young that, despite previously receiving excellent performance reviews, since her (Ms. Guay's) return from her FMLA and MFMLA leave, it was clear that the Company and Young were retaliating against her (Ms. Guay) for taking the FMLA and MFMLA leave. Indeed, Ms. Guay's work had been examined "under a microscope" and excessively scrutinized.

85.     On or about, September 3, 2021, Young said she was concerned about a prescription Ms. Guay had prescribed to a client.

86.     Ms. Guay explained to Young that she had followed all proper procedures for issuing this medication and that it was proper to issue it in this situation.

87.     On or about September 13, 2021, when Ms. Guay arrived at work and signed into her computer, Ms. Guay noticed that her schedule was empty.

88.     Ms. Guay asked Young why her schedule was empty. In response, Young said to Ms. Guay, "Can you do me a favor and make me full proxy for all of your patients because when you are not here, I can't get into your patient's files."

89.     Accordingly, Ms. Guay made Young full proxy for all of Ms. Guay's patients.

90.     This allowed Young to alter any of Ms. Guay's patient records.

91.    After making Young full proxy for all of her patients Young came into Ms. Guay's office to verify that she made her full proxy correctly.

92.    After verifying that Ms. Guay correctly made her full proxy for Ms. Guay's patients, Young asked Ms. Guay to go with her to the office of Human Resources Associate Amanda Mason ("Mason").

93.    Upon information and belief, Mason does not suffer from any disabilities and is not regarded as disabled by the Company.

94.    In Mason's office, Young and Ms. Guay were met by Mason and Associate Vice President of Adult Services, Raymond Douglas Townsend ("Townsend").

95.    Upon information and belief, Townsend does not suffer from any disabilities and is not regarded as disabled by the Company.

96.    Young said she was terminating Ms. Guay, allegedly for the prescription issued on or around September 3, 2021.

97.    Notably, the prescription was proper under both prescribing guidelines and Company policy/procedure.

98.    As such, Ms. Guay was involuntarily terminated as of September 3, 2021.

99.    Importantly, the Company has a progressive discipline policy that provides for multiple steps of discipline prior to termination.

100.    At no point was Ms. Guay subjected to progressive discipline (before being summarily terminated).

101.    Upon information and belief, non-disabled employees were routinely given progressive discipline instead of being terminated for alleged errors (including alleged prescription errors).

102.    Indeed, Young and the Company's management in general did not typically scrutinize non-disabled employees' prescription practices.

103.    Notably, as of Ms. Guay's termination, she still had not been provided with a dimmer switch or an anti-glare screen.  The Company thus denied and improperly failed to provide these accommodations.

104.    On or around May 12, 2022, Ms. Guay timely filed a Charge of Discrimination with the Maine Human Rights Commission ("MHRC"), which was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").

105.    On or around November 14, 2022, Ms. Guay informed the MHRC of her intent to withdraw her charge to pursue her claims in court.

106.    On or around November 16, 2022, the MHRC issued a dismissal letter to Ms. Guay with the right to pursue her claims in court.

107.    On or around November 17, 2022, Ms. Guay informed the EEOC of her intent to withdraw her charge to pursue her claims in court.

108.    On or around November 17, 2022, the EEOC issued Ms. Guay a right to sue letter.

109.    This lawsuit is timely filed.

## COUNT I

**(Disability Discrimination and Failure to Accommodate in Violation of the Maine Human Rights Act, Title 5, Chapter 337)**

**Ms. Guay v. The Defendant**

110.    Ms. Guay incorporates all paragraphs above and below as if set forth fully herein.

111.    The Company is a covered entity under the Maine Human Rights Act ("MHRA") because it was the employer of Ms. Guay.

112.    Ms. Guay suffers (and at all relevant times suffered) from a disability, chronic migraine with aura.  Ms. Guay's disability is an impairment that substantially limits one or more of her major life activities (especially during flare-ups), including, but not limited to, Ms. Guay's ability to concentrate, drive, and eat.  Ms. Guay's chronic migraines also substantially impair and limit the operation of one or more of her major bodily functions, including, but not limited to, her neurological and brain functioning.  Accordingly, Ms. Guay is (and at all relevant times was) disabled under the MHRA.

113.    At all relevant times, Ms. Guay was a qualified employee and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

114.    Ms. Guay disclosed her disabilities to the Defendant; and/or Defendant was aware of Ms. Guay's disabilities; and/or Defendant regarded Ms. Guay as disabled.

115.    Ms. Guay requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job.  These requested reasonable accommodations included, but were not limited to, time off, a reduced schedule, a dimmer switch for her light, and a screen protector.

116.    The disability-related accommodations requested by Ms. Guay did not pose an undue burden on the Defendant.

117.    The Defendant failed to engage in an interactive dialogue related to one or more of these disability-related accommodation requests.

118.    The Defendant unlawfully denied one or more of Ms. Guay's disability-related accommodation requests, including, but not limited to, time off during flare ups, a reduced schedule, a dimmer switch for her light, and a screen protector.

119.    Defendant discriminated against Ms. Guay due to her disability by subjecting Ms. Guay to adverse actions, including, but not limited to, subjecting Ms. Guay to a harassing and otherwise hostile work environment, denying her the benefit of progressive discipline, scrutinizing her work more carefully than that of others, and/or terminating Ms. Guay's employment.

120.    Non-disabled employees of Defendant were treated more favorably than Ms. Guay including through not being improperly harassed, being given the benefit of progressive discipline, and/or not being terminated.

121.    The Company acted with malice and/or with reckless indifference to the state protected rights of Ms. Guay.

122.    As a direct and proximate result of the Defendant's violations of the MHRA, Ms. Guay has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

123.    Ms. Guay seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), reduced earning capacity, other financial damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages, interest, attorneys' fees, and costs.

## COUNT II

### (Disability Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)

### Ms. Guay v. The Defendant

124.   Ms. Guay incorporates all paragraphs above and below as if set forth fully herein.

125.   During all relevant times, Defendant was an employer under the Americans with Disabilities Act, 42 U.S.C. §§12101, et. seq. (hereinafter the "ADA"), because it employed more than 15 persons for 20 or more calendar weeks within the previous 12 month period.

126.   Ms. Guay suffers (and at all relevant times suffered) from a disability, chronic migraine with aura. Ms. Guay's disability is an impairment that substantially limits one or more of her major life activities (especially during flare-ups), including, but not limited to, Ms. Guay's ability to concentrate, drive, and eat. Ms. Guay's chronic migraines also substantially impair and limit the operation of one or more of her major bodily functions, including, but not limited to, her neurological and brain functioning. Accordingly, Ms. Guay is (and at all relevant times was) disabled under the ADA.

127.   At all relevant times, Ms. Guay was a qualified employee and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

128.   Ms. Guay disclosed her disabilities to the Defendant; and/or Defendant was aware of Ms. Guay's disabilities; and/or Defendant regarded Ms. Guay as disabled.

129.   Ms. Guay requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included, but were not limited to, time off, a reduced schedule, a dimmer switch for her light, and a screen protector.

130.    The disability-related accommodations requested by Ms. Guay did not pose an undue burden on the Defendant.

131.    The Defendant failed to engage in an interactive dialogue related to one or more of these disability-related accommodation requests.

132.    The Defendant unlawfully denied one or more of Ms. Guay's disability-related accommodation requests, including but not limited to, time off during flare ups, a reduced schedule, a dimmer switch for her light, and a screen protector.

133.    Defendant discriminated against Ms. Guay due to her disability by subjecting Ms. Guay to adverse actions, including, but not limited to, subjecting Ms. Guay to a harassing and otherwise hostile work environment, denying her the benefit of progressive discipline, scrutinizing her work more carefully than that of others, and/or terminating Ms. Guay's employment.

134.    Non-disabled employees of Defendant were treated more favorably than Ms. Guay including through not being improperly harassed, being given the benefit of progressive discipline, and/or not being terminated.

135.    Upon information and belief, the Defendant replaced Ms. Guay with a lesser or similarly qualified, non-disabled employee.

136.    The Defendant acted with malice and/or with reckless indifference to the federally protected rights of Ms. Guay.

137.    As a direct and proximate result of the Company's violation of the ADA, Ms. Guay has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

138.     Ms. Guay seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

## COUNT III

**(Interference with, and Retaliation for, Exercising Rights under the Family and Medical Leave Act – 29 U.S.C. §2615)**

**Ms. Guay v. The Defendant**

139.     Ms. Guay incorporates all paragraphs above and below as if set forth fully herein.

140.     During all relevant times, the Defendant was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

141.     As such, at all relevant times, the Defendant was an employer under the FMLA.

142.     At all relevant times, the Defendant employed 50 or more employees within 75 miles of Ms. Guay's worksite.

143.     At all relevant times (from October 2006 onward), Ms. Guay had worked for the Defendant for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

144.     As such, from October 2006 onward, Ms. Guay was an eligible employee under the FMLA.

145.     Ms. Guay suffered from one or more serious health conditions, including, but not limited to, her migraines with aura.

146.    Ms. Guay was entitled to FMLA leave.

147.    Ms. Guay sought to exercise her rights under the FMLA, including by requesting and utilizing one or more protected leaves under the FMLA.

148.    Specifically, Ms. Guay sought to exercise intermittent leave or continuous leave during flare ups and for a reduced schedule.

149.    Ms. Guay timely notified Defendant that she would need FMLA leave.

150.    Defendant interfered with, restrained, and/or denied the exercise of, or the attempted exercise of, Ms. Guay's rights under the FMLA, including by refusing to allow Ms. Guay to take time off and disciplining her for FMLA absences.

151.    Defendant, including by and through their agents, retaliated and/or discriminated against Ms. Guay for requesting and/or utilizing FMLA leave by subjecting Ms. Guay to adverse actions, including, but not limited to, subjecting Ms. Guay to a harassing and otherwise hostile work environment, denying her the benefit of progressive discipline, scrutinizing her work more carefully than that of others, and/or terminating Ms. Guay's employment.

152.    Defendant's actions were willful and undertaken in bad faith.

153.    As a direct and proximate result of the Defendant's violation of the FMLA, Ms. Guay has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

154.    Ms. Guay seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

## COUNT IV

**(Interference with, and Retaliation for, Exercising Rights under the Maine Family and Medical Leave Act, Title 26, Chapter 7)**

### Ms. Guay v. The Defendant

155.    Ms. Guay incorporates all paragraphs above and below as if set forth fully herein.

156.    During all relevant times, the Defendant was an employer under the Maine Family and Medical Leave Act ("MFML") because at all relevant times Defendant employed 15 or more employees in the State of Maine at one location.

157.    At all relevant times (from October 2006 onward), Ms. Guay had worked for the Defendant for 12 or more consecutive months.

158.    As such, from October 2006 onward, Ms. Guay was an eligible employee under the MFML.

159.    Ms. Guay suffered from one or more serious health conditions, including, but not limited to, her migraines with aura.

160.    Ms. Guay was entitled to MFML leave.

161.    Ms. Guay sought to exercise her rights under the MFML, including by requesting and utilizing one or more protected leaves under the MFML.

162.    Specifically, Ms. Guay sought to exercise intermittent leave or continuous leave during flare ups and for a reduced schedule.

163.    Ms. Guay timely notified Defendant that she would need MFML leave.

164.    Defendant interfered with, restrained, and/or denied the exercise of, or the attempted exercise of, Ms. Guay's rights under the MFML, including by refusing to allow Ms. Guay to take time off and disciplining her for MFML absences.

165.    Defendant, including by and through their agents, retaliated and/or discriminated against Ms. Guay for requesting and/or utilizing MFML leave by subjecting Ms. Guay to adverse actions, including, but not limited to, subjecting Ms. Guay to a harassing and otherwise hostile work environment, denying her the benefit of progressive discipline, scrutinizing her work more carefully than that of others, and/or terminating Ms. Guay's employment.

166.    Defendant's actions were willful.

167.    As a direct and proximate result of the Defendant's violation of the MFML, Ms. Guay has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

168.    Ms. Guay seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated damages in the amount of $100 a day each day the violation continued, liquidated damages in the amount of Ms. Guay's back pay and liquidated damages (i.e. double damages), interest, attorneys' fees, and costs.

## COUNT V

## (Retaliation in Violation of the Maine Human Rights Act, Title 5, Chapter 337)

## Ms. Guay v. The Defendant

169.   Ms. Guay incorporates all paragraphs above and below as if set forth fully herein.

170.   Ms. Guay engaged in protected activity under the MHRA, including, but not limited to, (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Defendant due to Ms. Guay's disability; (ii) requesting and utilizing reasonable accommodations for disabilities which were intended to allow Ms. Guay to perform the essential functions of her job; and/or (iii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the failure of the Defendant to provide disability-related reasonable accommodations and/or the failure of the Defendants to engage in an interactive dialogue related to Ms. Guay's requested accommodations.

171.   The disability-related accommodation requests which Defendant retaliated against Ms. Guay for requesting and/or utilizing included, but were not limited to, time off during flare ups, a reduced schedule, a dimmer switch, and a screen protector.

172.   Defendant unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Guay's exercising of or enjoyment of rights granted by the MHRA.

173.   More specifically, Defendant subjected Ms. Guay to adverse actions, including, but not limited to, subjecting Ms. Guay to a harassing and otherwise hostile work environment, denying her the benefit of progressive discipline, scrutinizing her work more carefully than that of others, and/or terminating Ms. Guay's employment.

174.    The Defendant acted with malice and/or with reckless indifference to the state protected rights of Ms. Guay.

175.    As a direct and proximate result of the Company's violations of the MHRA, Ms. Guay has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

176.    Ms. Guay seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, and costs.

**COUNT VI**

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Ms. Guay v. The Defendant**

177.    Ms. Guay incorporates all paragraphs above and below as if set forth fully herein.

178.    The Plaintiff engaged in protected activity under the ADA, including, but not limited to, (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Defendant due to Ms. Guay's disability; (ii) requesting and utilizing reasonable accommodations for disabilities which were intended to allow Ms. Guay to perform the essential functions of her job; and/or (iii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the failure of the Defendant to provide disability-related reasonable accommodations and/or the failure of the

Defendants to engage in an interactive dialogue related to Ms. Guay's requested accommodations.

179.     The disability-related accommodation requests which Defendant retaliated against Ms. Guay for requesting and/or utilizing included, but were not limited to, time off during flare ups, a reduced schedule, a dimmer switch, and a screen protector.

180.     Defendant unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Guay's exercising of or enjoyment of rights granted by the ADA.

181.     More specifically, Defendant subjected Ms. Guay to adverse actions, including, but not limited to, subjecting Ms. Guay to a harassing and otherwise hostile work environment, denying her the benefit of progressive discipline, scrutinizing her work more carefully than that of others, and/or terminating Ms. Guay's employment.

182.     The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Guay.

183.     As a direct and proximate result of the Company's violation of the ADA, Ms. Guay has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

184.     Ms. Guay seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

WHEREFORE, the Plaintiff, Stacy Guay, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendant liable on all counts;

C.  Award the Plaintiff her lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including for monetary losses resulting from her termination, as well as injury to reputation;

E.  Award the Plaintiff emotional distress damages;

F.  Award the Plaintiff compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses);

G.  Award the Plaintiff liquidated damages;

H.  Award the Plaintiff punitive damages;

I.  Award the Plaintiff her attorney's fees;

J.  Award the Plaintiff interest and costs;

K.  Award the Plaintiff all other damages to which she is entitled; and

L.  Grant such further relief as is just and equitable.

Respectfully Submitted,

STACY GUAY

By her attorneys,

THE LAW OFFICES OF WYATT &
ASSOCIATES P.L.L.C

Date:   November 18, 2022          By:     _/s/Timothy Brock_____

Benjamin J. Wyatt, ME # 6118
BWyatt@Wyattlegalservices.com

Timothy J. Brock, ME # 6075
TBrock@Wyattlegalservices.com

The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868